**UNITED STATES of America, Plaintiff,**

v.

**Melville A. DRISKO, Defendant.**

**Civ. A. No. 4484.**

United States District Court
E. D. Virginia,
Alexandria Division.

Sept. 15, 1969.

Claude V. Spratley, Jr., U. S. Atty., C. P. Montgomery, Jr., Asst. U. S. Atty.,

Herbert B. Hoffman, Trial Atty., Dept. of Justice, for plaintiff.

LeRoy E. Batchelor, Jr., Arlington, Va., of counsel, Raymond W. Bergan and William E. McDaniels, Washington, D. C., for defendant.

## MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

This suit was brought by the United States to recover the secret profits and gratuities one of its employees received from Anthony DeAngelis during the years 1957–1961.

During the years in question Melville A. Drisko was employed by the United States Department of Agriculture as the Director of the Livestock and Meat Products Division of the Foreign Agriculture Service.

Anthony DeAngelis was in the business of purchasing, refining and processing certain types of fats and oils through his various companies. He was participating in certain programs being administered by the Fats and Oils Division of the Foreign Agriculture Service.

Mr. DeAngelis had difficulties with the Department of Agriculture running as far back as 1950. He had engaged prominent law firms to protect his interests in the premises, without success. By 1957 some of the disputes were referred to the Department of Justice for evaluation and possible prosecution.

In late 1956 Mr. DeAngelis mentioned to a mutual friend that the Department of Agriculture was unfair in its dealings with him and he needed someone on the inside to protect his interests.

Shortly thereafter Mr. Drisko was introduced to Mr. DeAngelis by a mutual friend. After discussing the matter in some detail Mr. Drisko agreed to do what he could. No mention was then made as to what, if anything, Mr. Drisko was to receive for the help.

During the years in question Mr. Drisko handled some 14 or 15 matters for Mr. DeAngelis with the Foreign Agriculture Service—he kept Mr. DeAngelis informed by telephone and in person—he went to New Jersey and to New York and met Mr. DeAngelis in Washington on numerous occasions.

Mr. DeAngelis bought and made the payments on two automobiles and titled them in Mr. Drisko's name—he sent him a deep freezer of unknown value—he gave him one or two checks in various amounts when he reported to him in New Jersey and in New York. On one occasion he gave Mr. Drisko a $25,000 check and took back Mr. Drisko's post dated check in the amount of $21,000— during the period in question Mr. DeAngelis gave Mr. Drisko $40,564.50. Mr. DeAngelis testified that he gave Mr. Drisko the automobiles and freezer and the checks for helping him—for being his representative in the Department of Agriculture in connection with problems he had with the Department—he said it was compensation in the form of gifts— not loans.

Mr. Drisko admitted receiving the money and depositing it in his bank account—he admitted that Mr. DeAngelis made the payments on the automobiles. He denied that Mr. DeAngelis paid for the deep freezer. He claims the automobiles were gifts—and the money was a loan—he gave no satisfactory reason why Mr. DeAngelis gave him two automobiles—he admitted that he never paid any of the money back and that he kept no record of the amounts received—he further admitted that he had not paid any interest on the money and that he had no record of what he owed Mr. DeAngelis. He recalled receiving the $25,-000 check from Mr. DeAngelis and giving him his post dated check in the amount of $21,000 but could not recall why he kept the $4,000 difference or what it was for.

Mr. Drisko further admitted he went to New Jersey and New York on numerous occasions—that he was met by Mr. DeAngelis' chauffeur and taken to Bayonne, New Jersey or New York to see Mr. DeAngelis—he denies giving Mr. DeAngelis any confidential information

pertaining to the various matters pending before the Foreign Agriculture Service Section of the Department of Agriculture or attempting to influence any of his fellow workers in the Agriculture Department who were handling Mr. DeAngelis' problems. He further denied telling Mr. DeAngelis that the Agriculture Department was going to forward some of the disputes to the Department of Justice for evaluation. He claims that Mr. DeAngelis was his friend and that he gave him the automobiles and loaned him the money because he was a kind and generous man.

■ From the exhibits examined and the evidence heard the Court finds that during the period in question Melville A. Drisko was an undisclosed agent of Anthony DeAngelis and as such he kept his principal informed as to what was going on and used his best efforts with fellow employees of the Foreign Agriculture Service Section of the Department of Agriculture in protecting Mr. DeAngelis and his company's interests in the numerous problems Mr. DeAngelis then had with the Department of Agriculture.

The Court further finds that the deep freezer, the automobiles and the money Mr. Drisko received from Mr. DeAngelis were secret profits and gratuities for being Mr. DeAngelis' representative in the Department of Agriculture.

Clearly, Mr. Drisko placed himself in a position of serving conflicting interests and loyalties without the knowledge of his principal (United States) when he secretly advanced the interests of Mr. DeAngelis with his fellow employees and by keeping Mr. DeAngelis informed of what was going on in the Department of Agriculture regarding his pending claims. Under these circumstances the United States may recover any undisclosed profits, commissions, gratuities or other emoluments received by Mr. Drisko from Mr. DeAngelis. See United States v. Drumm, 329 F.2d 109-First Circuit 1964.

"The master as the party whose trust has been betrayed has the widest relief. He is entitled to all of the fruits of the servant's dereliction." See United States v. Bowen, 290 F.2d 40-Fifth Circuit 1961.

See also United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910), where Justice Lurton speaking for the Supreme Court said,

"The larger interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent. If he takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received." Underscoring sup-

■ The defendant's contention that Mr. Drisko was not employed in the Fats and Oils Division of the Foreign Agriculture Service of the Department of Agriculture begs the question—he was an employee of the United States working in another Division of the Foreign Agriculture Service—he had direct contacts with his fellow employees and access to practically everything that was going on in the Department pertaining to Mr. DeAngelis' difficulties—he used the confidential information thus obtained for personal gain. An unfaithful employee who uses confidential information acquired by virtue of his employment with the opportunity of detriment to his employer is liable to the employer for gains and profits received.

The Government has proved the defendant, Melville A. Drisko, received secret profits totaling $40,564.50. Judgment in that amount together with interest from the dates the money was received by the defendant plus taxable costs will be awarded.

The alternate tax and criminal remedies, if any, available to the Government in the premises do not bar the Government from recovering the secret profits

and gratuities thus received via this civil action.

The United States Attorney for this District will prepare an appropriate judgment order in accordance with this memorandum opinion, submit the same to counsel for the defendant for approval as to form, then to the Court for entry.

The Clerk will send a copy of this memorandum opinion to all counsel of record.