**Edwin B. MISHKIN, as Sipa Trustee for the Liquidation of the Business of Adler, Coleman Clearing Corp., Plaintiff,**

v.

**Roy AGELOFF, Robert F. Catoggio, Lowell Schatzer, Ronan Garber, Joseph Dibella, John Lembo, Mark A. Mancino, Joseph Scarfone, Chris Wolf, Randy M. Ashenfarb, Earl Rusnak, and Danny Garberg, Defendants.**

No. 97 CIV.2690(VM).

United States District Court, S.D. New York.

Jan. 15, 2004.

Thomas J. Maloney, Cleary, Gottlieb, Steen & Hamilton, New York, NY, for Appellant.

Andrew B. Schultz, Great Neck, NY, Paul F. Condzal, Paul Frank Condzal, David J. Aronstam, David J. Aronstam, Paul Condzal, New York, NY, Randy M. Ashenfarb, pro se, Staten Island, NY, Michael P. Gilmore, Wexler & Burkhart, Mitchell Field, NY, David Molton, Buchanan Ingersoll, New York, NY, for Appellees.

### DECISION AND ORDER

MARRERO, District Judge.

### I. BACKGROUND

Plaintiff, as trustee (the "Trustee") for the liquidation of the business of Adler, Coleman Clearing Corp. ("Adler"), brought this action pursuant to the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa-78lll, alleging violations of federal securities laws and state common law fraud. Defendants (collectively "Defendants") were traders and/or brokers of Hanover Sterling & Company, Ltd. ("Hanover"), an introducing broker/dealer firm for which Adler served as clearinghouse. In related proceedings addressing claims filed in the Bankruptcy Court in this District by Hanover customers serviced by Defendants, the Bankruptcy Court made findings of fact, thoroughly detailed in an opinion affirmed by this Court, that Defendants had engaged in a massive scheme designed to defraud Adler and the Securities Investors Protection Corporation created by SIPA, activities that ultimately resulted in the insolvency of both Hanover and Adler. See Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.), 247 B.R. 51 (Bankr.S.D.N.Y.1999), aff'd., 263 B.R. 406, 433–35 (S.D.N.Y.2001).

In separate proceedings initiated by the United States following investigations by Government regulators, Defendants and other Hanover officers and employees were charged with criminal violations of Section 10(b) of the Securities Exchange Act of 1934 (" § 10(b)"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the SEC.[1] Defendants Roy Ageloff ("Ageloff"), Robert F. Catoggio, Joseph DiBella, Randy M. Ashenfarb, John Lembo, Mark A. Mancino and Joseph Scarfone pled guilty to various charges of fraud, rigging initial public offerings, manipulation of stock prices and/or unauthorized trading arising out of their securities services at Hanover. See United States v. Catoggio, et al., Superseding Indictment,

---

1. Rule 10b–5 provides that it is unlawful: for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange,

    a. To employ any device, scheme, or artifice to defraud,

    b. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    c. To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

No. 98 Cr. 1129(S) (E.D.N.Y.) (the "Criminal Action"). Two other Hanover brokers were convicted after a trial in the Eastern District of New York (the "Hanover Trial"). *See United States v. Nazareno*, No. CR 98–1129(S) (E.D.N.Y. Apr. 10—May 3, 2001). At the Hanover Trial, several of the Defendants in the present case testified and admitted having engaged in illegal conduct that the Trustee asserts encompasses the unlawful activities charged in the complaint in the underlying action now before this Court. Their testimony also implicated the other Defendants in the same fraudulent practices that permeated Hanover. Defendants' scheme included manipulating the market for certain Hanover house stocks; booking fake purchases and sales of stock during a period Defendants knew Hanover was insolvent; knowingly shifting losses anticipated from their scheme and the impending Hanover insolvency away from certain favored customers and on to Adler, which was obligated by a clearinghouse agreement to guarantee Hanover's trades; and booking false entries into customer accounts in order to conceal Defendants' fraud and thereby place their favored customers in a preferred position in the event of Hanover's bankruptcy. *See Mishkin*, 247 B.R. at 64, 263 B.R. at 482.

As a consequence of Defendants unlawful activities, Adler, which as Hanover's clearing firm was compelled to honor its guarantee of Hanover trades, suffered losses that the Trustee seeks to recover from Defendants in this action. To that end, the Trustee filed the instant motion for summary judgment on liability.[2] The Court established a schedule that called for Defendants to respond by November 12, 2003 and the motion to be fully briefed by December 5, 2003. None of the Defendants filed opposition to the motion.

## II. DISCUSSION

### A. STANDARD OF REVIEW

A party is entitled to summary judgment if on the basis of the record before it, including the pleadings, admissions and affidavits filed, the Court concludes that there is no genuine issue as to any material fact, and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir.2000).

### B. COLLATERAL ESTOPPEL

In support of the instant motion for summary judgment on liability, the Trustee relies on the determination of the essential facts conclusively decided against Defendants at the Hanover Trial, and contends that by application of collateral estoppel Defendants are precluded from relitigating matters already adjudicated in the criminal proceedings.

Summary judgment is appropriate under the doctrine of collateral estoppel (issue preclusion) when all the material issues of fact in a pending action have been actually and necessarily resolved in a prior proceeding. *See State of New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir.2000); *NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir.1999). "[A] crim-

---

**2.** Defendants Ageloff and Lowell Schatzer ("Schatzer") are excluded from the Trustee's motion. The Trustee reached a settlement with Ageloff for an amount of $65 million that was approved by this Court in a Judgment and Order filed in this action on February 6, 2002. In the Hanover bankruptcy proceeding, the Trustee obtained a Default Judgment against Schatzer that was filed on September 19, 1997 in the amount of $50 million on all claims for relief.

inal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978) (citations omitted). For collateral estoppel to apply, the court must find that (1) "the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Thalbo Corp.,* 171 F.3d at 109.

## C. *APPLICATION OF STANDARDS*

■■■ Defendants' convictions of § 10(b) violations stemmed from their participation in the fraudulent scheme Defendants perpetrated at Hanover to which their criminal convictions related, as also found by the Bankruptcy Court and affirmed by this Court. *See Mishkin,* 263 B.R. at 424. The allegations of § 10(b) violations and common law fraud described in the Trustee's complaint in this action parallel the events and charges determined at the Hanover Trial and in the Defendants' guilty pleas, as well as the conduct of Defendants and others that is described in the Bankruptcy Court's findings of fact. Consequently, the record before the Court contains overwhelming uncontroverted evidence establishing Defendants'. liability for the wrongdoing the Trustee asserts in this action. On this basis, the Court concludes that the essential elements the Trustee would be required to prove to sustain Defendants' liability in this action were determined against the Defendants in the criminal proceeding and embodied in the judgments there rendered. Those elements include: (1) misstatements or omissions by Defendants; (2) relating to material facts; (3) involving scienter on the part of Defendants; (4) relied upon by the Trustee; (5) made in connection with the purchase or sale of a security; and (6) causing damage to the Trustee. *See Feinman v. Dean Witter Reynolds, Inc.,* 84 F.3d 539, 540 (2d Cir.1996) (citing *In re Time Warner Inc. Secs. Litig.,* 9 F.3d 259, 264 (2d Cir.1993), *cert. denied,* 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994)). By application of the doctrine of collateral estoppel, Defendants are barred from relitigating those issues. *See Beck v. Levering,* 947 F.2d 639, 642 (2d Cir.1991).

It is settled that a party in a civil case may be precluded from relitigating issues adjudicated in a prior criminal proceeding and that the Government may rely on the collateral estoppel effect of the conviction in support of establishing the defendant's liability in the subsequent civil action. *See Podell,* 572 F.2d at 35; *see also Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 43 (2d Cir.1986); *SEC v. Tandem Mgmt. Inc.,* No. 95 Civ. 8411 (JGK), 2001 WL 1488218, at *8 (S.D.N.Y. Nov.21, 2001); *SEC v. McCaskey,* No. 98 Civ. 6153 (SWK), 2001 WL 1029053, at *3 (S.D.N.Y. Sept.6, 2001). Defendants' guilty pleas and convictions incorporated the actual litigation and conclusive decision of those underlying issues. *See Podell,* 572 F.2d at 35. There was a full and fair opportunity for Defendants to litigate the issues in the criminal proceedings. Some elected to plead guilty, thereby accepting the truth of the charges brought against them, and some testified at the trial at which other Hanover brokers were found guilty of participating in the unlawful conduct alleged here. Finally, the fraudulent activities that Defendants admitted or were found to have committed in the Criminal Action encompass the elements necessary to support a judgment on the merits in this action. Because

those facts and issues established violations of § 10(b) and Rule 10(b)–5, the Trustee can rely on the judgments entered in the Criminal Action to establish Defendants' liability under the same charges alleged by the Trustee in the civil complaint. *See McCaskey*, 2001 WL 1029053, at *3.

■ The facts established by Defendants' convictions, uncontested on the record of the Trustee's motion that has been presented to the Court, are sufficient to satisfy all the prerequisites for civil liability under § 10(b) and Rule 10(b)–5. Similarly, the Trustee has established the requirements for liability on the common law fraud claim, insofar as the elements essentially reflect those applicable to § 10(b) liability. The Bankruptcy Court's findings in *Mishkin* are sufficient to establish that the Defendants' conduct satisfied the prerequisites of common law fraud. *See* 247 B.R. at 125. Accordingly, the Trustee in entitled to summary judgment on liability as to both federal and state law claims.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of plaintiff Edwin B. Mishkin ("Trustee") for summary judgment on liability is granted as to defendants Robert F. Catoggio, Ronan Garber, Joseph DiBella, John Lembo, Mark A. Mancino, Joseph Scarfone, Chris Wolf, Randy M. Ashenfarb, Earl Rusnak, and Danny Garber as regards the Trustee's claims alleging securities violations of Section 10(b) of the Securities Exchange Act and common law fraud; and it is further

**ORDERED** that within fifteen (15) days of the date of this Order the Trustee file with the Court and serve on the defendants subject of the liability judgment au-

thorized herein, particulars and documentation concerning the damages to be awarded as against each defendant found liable.

**SO ORDERED.**