15-2602-cv
Kerr v. Morrison

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand sixteen.

PRESENT: PIERRE N. LEVAL,
     ROBERT D. SACK,
     REENA RAGGI,
      *Circuit Judges.*

-------------------------------------------------------------------------

DONALD KERR,

     *Plaintiff-Appellant*,

    v.              No. 15-2602-cv

JAMES MORRISON, ROBERT MORIARTY, in their individual capacities,

     *Defendants-Cross-Defendants-Appellees*,

JOSEPH A. SNYDER, DETECTIVE SERGEANT R. LUCCHESI, SERGEANT SCOTT BUTLER, in their individual capacities,

     *Defendants-Cross-Claimants-Appellees*.[1]

-------------------------------------------------------------------------

APPEARING FOR APPELLANT:  MICHAEL H. SUSSMAN, Sussman & Watkins, Goshen, New York.

---

[1] The Clerk of Court is directed to amend the caption as set forth above.

1

| APPEARING FOR CROSS-<br>DEFENDANTS-APPELLEES: | KAREN FOLSTER LESPERANCE, Assistant United States Attorney, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Albany, New York. |
|---|---|
| APPEARING FOR CROSS-<br>CLAIMANTS-APPELLEES: | ERIC M. KURTZ, Esq., Cook, Netter, Cloonan, Kurtz & Murphy, P.C., Kingston, New York. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on July 17, 2015, is AFFIRMED.

Plaintiff Donald Kerr, whose November 4, 2011 arrest for possession of a package of marijuana was followed by the grand jury's decision to return no indictment, here appeals from an award of summary judgment in favor of defendants U.S. Postal Inspectors James Morrison and Robert Moriarty ("Federal Defendants") and Joseph A. Snyder, Detective Sergeant R. Lucchesi, and Sergeant Scott Butler ("Municipal Defendants," and, together with Federal Defendants, "Defendants") on Kerr's claims under 42 U.S.C. § 1983 for false arrest and unlawful retention of his laptop computer.[2] We review an award of summary judgment <u>de novo</u> and will affirm only if the record, viewed in the light most favorable to the non-movant, shows no genuine issue of material fact and the movant's entitlement to judgment as a matter of law. <u>Jackson v. Fed. Express</u>, 766 F.3d 189, 193–

---

[2] Kerr and Federal Defendants agree that the § 1983 claims against Federal Defendants are properly construed as claims brought pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). <u>See</u> <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995) (stating that § 1983 action against federal defendants properly construed as <u>Bivens</u> action). This makes no difference to our legal analysis.

94 (2d Cir. 2014).   We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.   <u>False Arrest</u>

In granting judgment to Defendants on Kerr's false arrest claim, the district court concluded that his initial apprehension was a permissible investigative detention supported by reasonable suspicion.   See <u>Kerr v. Snyder</u>, No. 1:12-CV-1392 (MAD/CFH), 2015 WL 4404342, at *8 (N.D.N.Y. July 17, 2015).   Kerr disputes the finding of reasonable suspicion and argues that, in any event, his detention transformed into an arrest when he was handcuffed, requiring probable cause, which was here lacking.

   a.   <u>Initial Detention Was an Investigative Stop</u>

An officer who has a "particularized and objective basis for suspecting legal wrongdoing," <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002) (internal quotation marks omitted), based upon "specific and articulable facts," may stop and detain a person for such time as is reasonably necessary to investigate those suspicions, <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968).   The standard is "not [a] high" one, <u>Richards v. Wisconsin</u>, 520 U.S. 385, 394 (1997), requiring only facts sufficient to suspect that criminal activity "may be afoot," <u>United States v. Bailey</u>, 743 F.3d 322, 332 (2d Cir. 2014) (internal quotation marks omitted).   In assessing reasonable suspicion, a court looks at the totality of circumstances as viewed by a reasonable officer "whose insights are necessarily guided by his experience."   <u>United States v. Singletary</u>, 798 F.3d 55, 60 (2d Cir. 2015).

3

Applying these principles here, we conclude that Defendants possessed the requisite reasonable suspicion of criminal activity to support an initial investigative stop of Kerr. The following undisputed facts support this conclusion:

(1) an ongoing investigation of suspicious packages mailed from the same area in California to New Paltz had led to at least one successful drug-possession prosecution of a package recipient;

(2) the particular address on the subject package being delivered on November 4, 2011—an address which serviced Kerr's office, another office, and an apartment—had previously received two suspicious packages and was thus subject to a "parcel watch" put in place by Inspector Morrison;

(3) the sender and addressee of the suspicious packages always had the same last name, but never any known associations with the addresses used;

(4) the subject package further appeared suspicious in that

(a) it was excessively taped, which Defendants knew to be a common practice when attempting to mask the odor of marijuana;

(b) it was sent from the same California area as the other suspicious packages;

(c) its return address, sender, and addressee appeared fictitious, with the addressee having no known association with the New Paltz address; and

(d) its mailing label bore a number sequential to that on a prior suspicious package, indicating simultaneous acquisition of the labels from the same post office, even

4

though the packages were sent from different post offices under different senders' names and on different dates; and

(5) Kerr initially inquired as to whether Inspector Morrison had a package for him. On being told that there was a package for Shaun Webber, Kerr suggested that the addressee (whom Defendants reasonably believed to be fictitious) lived upstairs, volunteered to take the package, signed for it, and accepted it. Finally, when Inspector Moriarty revealed himself to be a law enforcement agent, Kerr disavowed the package.

Kerr does not dispute the officers' reasonable suspicion as to the subject package. Rather, he argues that no evidence connected him to that package. That is belied, however, by his conduct in taking delivery, in light of the facts outlined above. His contention that he was accepting the package for an upstairs tenant rather than himself does not vitiate the reasonable suspicion for officers to stop him while they investigated further. See Fabrikant v. French, 691 F.3d 193, 216 (2d Cir. 2012) (observing that innocent explanation consistent with facts alleged does not negate probable cause). That is particularly so here, where Kerr claimed to know the package addressee, whom Defendants had reason to think was fictitious.

Thus, on de novo review, we conclude that reasonable suspicion existed to support an investigative stop.

b.     Handcuffing After Stop

Kerr claims that handcuffing transformed his initial stop into an arrest requiring probable cause. Defendants argue that they had at least arguable probable cause to arrest

Kerr at the time he was handcuffed. We need not decide that issue, either as to drug possession or making a false statement because, even if we were to resolve it in Kerr's favor, Defendants were entitled to summary judgment on the handcuffing part of Kerr's false arrest claim on the ground of qualified immunity.

Qualified immunity shields officials from claims for money damages unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a right to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question "beyond debate" in the particular factual context at issue. Id. at 741; Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007). In short, the law must have made "the contours" of the right "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. at 741 (internal quotation marks omitted); see id. at 743 (observing that qualified immunity standard is sufficiently forgiving that it protects "all but the plainly incompetent or those who knowingly violate the law" (internal quotation marks omitted)).

At the time of Kerr's 2011 arrest, the law was not sufficiently clear to alert every reasonable official that Kerr's handcuffing incident to a Terry stop was unconstitutional in this case. The use of handcuffs during an investigative stop was not then—and is not now—per se unconstitutional. Further, the challenged events occurred after our decision

6

in <u>United States v. Newton</u>, 369 F.3d 659 (2d Cir. 2004) (upholding handcuffing incident to stop), but before our decision in <u>United States v. Bailey</u>, 743 F.3d 322 (2d Cir. 2014) (clarifying suspicion necessary to support handcuffing incident to stop).

As a result, we cannot conclude that, in 2011, every reasonable official would have concluded that handcuffing Kerr incident to an investigatory stop was unreasonable, particularly given that Kerr's stop, as in <u>Newton</u>, lasted only minutes before probable cause was developed, and Defendants quickly moved Kerr from the street to his office at his request to avoid undue embarrassment. See <u>United States v. Newton</u>, 369 F.3d at 675.

Accordingly, Defendants are entitled to summary judgment on the ground of qualified immunity for the brief period that Kerr was handcuffed prior to the dog alert.

c. <u>The Dog Alert Provided Probable Cause To Arrest</u>

A dog alert to the presence of drugs in the subject parcel, together with other circumstances already detailed, provided probable cause for both a search warrant for the parcel and for Kerr's arrest. See <u>Illinois v. Gates</u>, 462 U.S. 213, 231–32 (1983) (observing that probable cause is "fluid" standard that assesses probability, not "hard certainties," in particular factual context (internal quotation marks omitted)). In urging otherwise, Kerr argues that the dog alert did nothing to associate him with the package. The argument fails because that probability was established by his own actions signing for and accepting the package. His claim that he was doing so only for a neighbor does not defeat probable cause, especially because Defendants had reason to believe that neighbor did not exist. See <u>Fabrikant v. French</u>, 691 F.3d at 216. Accordingly, Defendants are

7

entitled to summary judgment on this part of Kerr's false arrest claim.

2.      Unlawful Retention of Computer

Kerr faults Municipal Defendants for retaining his laptop computer—seized pursuant to a warrant—after the grand jury voted no true bill.   The claim fails because the record shows that the laptop was returned within seven days of Kerr's email request to Chief Snyder.   Kerr points to his deposition statement that he "worked through [his] attorney to the point of frustration" before making the return request himself.   J.A. 258. But this assertion does not demonstrate any return request to Municipal Defendants, much less constitutional misconduct in response.   Even if we assume arguendo Municipal Defendants' negligence in failing sua sponte to return the computer sooner, more than negligence is required to support a due process violation.   See Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004).   Accordingly, Municipal Defendants are entitled to summary judgment on this claim.

3.      Conclusion

We have considered all of Kerr's other arguments and conclude that they are without merit.   Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8